OPINION OF THE COURT
Eve Preminger, J.
Plaintiff moves for summary judgment. Defendant moves for an order directing plaintiff to appear for examination before trial.
Plaintiff has been the tenant of record in a rent-stabilized apartment in defendant landlord’s building since 1978. The lease was last renewed by the parties in 1981 and ran until March 31, 1982.
In February of 1981 plaintiff sublet his apartment to his daughter who subsequently moved in with her boyfriend. It is disputed whether plaintiff remained in occupancy after this time.
On March 6,1981, the defendants served plaintiff with a notice to cure, alleging that plaintiff no longer resided in the apartment and that the apartment had been sublet *721 without the landlord’s permission. Plaintiff subsequently obtained a preliminary injunction against defendants tolling the period statutorily given plaintiff to cure his default and enjoining defendants from evicting plaintiff in a summary proceeding. The order, signed by Judge Sinclair on May 4, 1981, required plaintiff to file an undertaking but plaintiff neglected to do so until after August 28, 1981 when the landlord informed plaintiff that he was terminating the tenancy because of plaintiff’s failure to comply with the order.
In addition to taking these steps, the landlord, on September 15, 1981, filed an application with the Conciliation and Appeals Board (CAB) for a determination that he was no longer obliged to renew plaintiff’s lease because of the illegal sublease and because plaintiff was no longer in occupancy. A decision on that petition is still pending.
In the meantime the parties continued to engage in litigation concerning the tenancy. In February, 1982, Justice Nadel dismissed a counterclaim for ejectment instituted by the landlord holding that the landlord had not yet been adjudged to have a right to possession but denying summary judgment to plaintiff regarding his right to possession.
On May 4, 1981 defendants presented the tenants with an offering plan to convert the building to a co-operative. Plaintiff was interested in buying his apartment and attempted to subscribe to the plan by filling out the subscription agreement and tendering a check. Both of these were returned to plaintiff by defendants, who have refused to sell an apartment to plaintiff at the “insider’s price”. Plaintiff, citing section 61 of the Code of the Rent Stabilization Association of New York City, Inc. (Code), maintains that he must be offered the right to purchase his apartment at this price if he is found to be either a tenant of record or in actual occupancy of the apartment. The Code (§ 61) provides, inter alia, that,
“4 * * * (b) A tenant in occupancy at the time of the offering [plan] shall have the exclusive right to purchase his apartment * * *
*722 “5. This Section 61 shall only apply to tenants in occupancy and lessees of record of vacant or subleased apartments at the time of the offering”.
Defendants contend that plaintiff is not entitled to the “insider’s price” because he illegally sublet and is no longer in actual occupancy.
Three cases bear closely on the instant one. In de Vasconcelos v Berkley Assoc. (78 AD2d 808), plaintiff tenant sought to buy what had been a rent-controlled apartment. A co-operative plan had been presented to the tenants on January 2, 1979. An application for decontrol had been filed approximately one year earlier, but the order of decontrol was issued only in May of 1979. Holding that that order of decontrol was not entitled to retroactive effect, the Appellate Division stated that plaintiff could not therefore claim status as occupant of a rent-stabilized (as opposed to rent-controlled) apartment at the time of the offering plan. Thus denied the more liberal provisions of the Code, plaintiff was relegated to attempting to show that she was a “bona fide residential tenant in actual physical occupancy” as mandated in the offering plan.
The tenant of record in Thuna v Di Sanza (102 Misc 2d 342, affd 78 AD2d 517) had sublet his rent-stabilized apartment to his niece and her husband and subsequently sought to purchase the residence under the co-operative conversion plan. As section 61 of the Code applied, plaintiff’s actual physical occupancy was irrelevant in light of the fact that he qualified to purchase as the “lessee of record”. The court further held that the landlord could not dispute plaintiff’s status as a proper “lessee of record” because he had long had full knowledge that the tenant had been subletting and had never attempted to evict or object to the sublease.
Similarly, in Wissner v 15 West 72nd St. Assoc. (87 AD2d 120), plaintiff was using his rent-stabilized apartment as a professional office instead of as a residence as required in the lease. The landlord had known of the breach for at least 10 years but had never instituted an action for possession nor petitioned the CAB. In holding that the tenant was entitled to buy the apartment at the “insider’s price” upon *723 co-operative conversion the court stated that the “key issue” was whether the tenant was entitled to the benefit of the Code and found that he was so entitled (pp 124-125): “Accordingly, on the critical date of the presentation of the offering plan for co-operative conversion, the plaintiff was the lessee of record of an apartment subject to rent stabilization whose status, as such, had not theretofore been challenged by the landlord nor changed by eviction action or proceeding, or by a determination, administrative or judicial, that the premises were not his primary residence.”
The instant case shares with Thuna and Wissner (supra) the critical issue whether plaintiff was a “lessee of record” under the Code on the date of presentation of the conversion plan. Plaintiff’s status as a “tenant in occupancy” on that date has not been proven and summary judgment must be denied on that ground. It is clear, however, that if plaintiff has established that he was the “lessee of record” he may obtain summary judgment.
Defendant landlord argues that, unlike the landlords in Wissner and Thuna (supra), he had challenged plaintiff’s tenancy prior to the presentation date of May 4, 1981 having served plaintiff with a notice to cure on May 6, 1981. Additionally, he afterward challenged plaintiff’s right to a renewed lease before the CAB. It is claimed that these steps permit the landlord to deny plaintiff his status as “lessee of record.”
The court does not find the mere initiation of an action to contest the plaintiff’s tenancy sufficient to deny plaintiff his status under section 61 of the Code. An analysis of the opinion in Wissner (supra) reveals that only a determination of the status, i.e., judicial or administrative adjudication of the tenancy may do that. That the mere initiation of proceedings is insufficient is evident from the fact that the court added the phrase (p 125) “nor changed by eviction action or proceeding, or by a determination, administrative or judicial”. If bringing suit or petition were themselves sufficient to strip the tenant of his status of “lessee of record” that language would be superfluous and devoid of meaning.
It is also apparent from de Vasconcelos v Berkley Assoc, (supra) that it is only an adjudication or determination and *724 not the commencement of proceedings that alters the status of tenancy. The tenant in that case was found to have rent-control status on the date of presentation even though the application for control had been filed one year earlier and an order of decontrol had been issued after the date of presentation.
For these reasons, in the absence of administrative or judicial determination, the application to the CAB on September 15, 1981 and the bringing of a summary proceeding against plaintiff on March 6, 1981 did not alter plaintiff’s status as the “lessee of record” on the date of presentation. Plaintiff’s failure to file an undertaking is also not fatal to him as defendants never attempted to vacate the preliminary injunction under CPLR 6314. As Justice Nadel found, their service of a notice of termination of tenancy was therefore of no effect.
Accordingly, plaintiff’s motion for a summary judgment is granted.