OPINION OF THE COURT
 

 Bellacosa, J.
 

 The question is whether an estate can count among its assets the "insider’s price” of its decedent’s apartment. The deceased tenant of record died before the apartment was offered for sale under the subsequently accepted cooperative conversion plan. Controlling precedent and the relevant statute therefore compel a negative answer to the question posed.
 

 Decedent was the sole occupant and tenant of record on the lease of a rent-stabilized apartment owned by respondents and located on the Upper West Side of Manhattan. She died on August 22, 1986 with 10 months left on her lease. The estate, which continued the obligated rent payments, used the apartment for storing decedent’s personal property. In December 1986, with six months left on the lease, respondents’ offering plan to convert their apartment building to cooperative ownership was accepted by the Attorney-General. Respondents’ sale offer included special advantages for "Tenant-Purchasers”. The estate purported to accept the offer as a "Tenant-Purchaser” for the shares allocated to its decedent’s apartment. Respondents refused the tender and the estate started a proceeding in Surrogate’s Court to compel the sale. While the Surrogate ruled in favor of the estate, the Appellate Division reversed, dismissing the petition. We granted leave to appeal and now affirm the order of the Appellate Division.
 

 The controlling statute makes "tenants in occupancy” eligible for an insider’s purchase option (General Business Law § 352-eeee [2] [d] [ix]). We have said that a " 'tenant in occupancy’ must be in actual possession and occupying the unit at the time the conversion plan is accepted for filing in
 
 *446
 
 order to qualify at all”
 
 (De Kovessey v Coronet Props. Co.,
 
 69 NY2d 448, 457). At the time of the offering in this case, neither the tenant of record, by then deceased, nor the successor in limited interest, the estate (not a named entity on the lease), was "occupying” the apartment at issue within the contemplation of the statute and of
 
 De Kovessey (id.).
 
 The landlord-tenant relationship, of course, was fundamentally changed by the decedent-tenant’s death, and the estate’s successory entitlements in respect to the apartment were for winding-up purposes only and certainly entailed no right of "occupancy” of the apartment after the end of the lease term
 
 (see,
 
 Real Property Law § 236).
 

 The purpose of the rent laws, as they pertain to cooperative conversions, is to protect dwellings for entitled persons or entities
 
 (see, e.g.,
 
 Administrative Code of City of New York § 26-501;
 
 see, Manolovici v 136 E. 64th St. Assocs.,
 
 70 NY2d 785, 787-788;
 
 De Kovessey v Coronet Props. Co.,
 
 69 NY2d 448,
 
 supra; Consolidated Edison Co. v 10 W. 66th St. Corp.,
 
 61 NY2d 341). Appellants acknowledge this underlying rationale by their attempt to fashion the facts to fit it. They allege "actual occupancy” of the apartment by an estate agent or part-time employee who concededly resides elsewhere and only occasionally visits the prized premises. Indeed, appellants, to assuage respondents’ suspicions that the "agent” was an unauthorized subtenant, have on the record represented that she did not legally or actually occupy decedent’s apartment.
 

 Our interpretations and applications of the governing statute should not, unwisely in our view, provide a legal inducement to estates, possessing limited windup responsibilities as to apartments of their decedents, to hoard potential dwellings from the market in the hope of a quick flip asset enhancement arising from a possibly forthcoming cooperative conversion plan. This "reverse warehousing” consequence in these instances would be inconsistent with the tenant protection scheme of General Business Law § 352-eeee.
 

 Consolidated Edison Co. v 10 W. 66th St. Corp.
 
 (61 NY2d 341,
 
 supra)
 
 does not suggest a different result. There, we ruled that a corporation — the actual party to the lease, unlike the instant case — was a "tenant in occupancy” of an apartment which was actually occupied and maintained for the use of the corporate-lessee’s "directors, officers and guests”
 
 (id.,
 
 at 345), not just for storage. In further contrast to the continuing
 
 *447
 
 corporate entity in
 
 Con Edison (id.),
 
 the entity at issue here, an estate, by its nature is transitory.
 

 Another of our precedents,
 
 Manolovici v 136 E. 64th St. Assocs.
 
 (70 NY2d 785, 787-788,
 
 supra),
 
 also recognized in an exceptional set of circumstances that a would-be cooperative purchaser, who did not reside full time in the disputed premises, could nevertheless enjoy the special benefits of "tenant-purchaser” status. However, key to that case was the party’s "sufficient connection to the apartment” and that the apartment was actually being used "for the purpose of raising and sheltering [the plaintiffs] family”.
 

 In sum, the prong of
 
 De Kovessey’s
 
 (69 NY2d 448,
 
 supra,
 
 at 457) conjunctive qualifying definition, that a tenant be "occupying the unit”, is unfulfilled in this case because the apartment here has no "tenant in occupancy” as legally contemplated under the statute. It is unnecessary to reach the question whether the other
 
 De Kovessey
 
 prong, that of "actual possession”, was met. Also, we need not now try to visualize the exceptional circumstances under which an estate "entity” might qualify for the exercise of an option to purchase at an insider’s price.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Hancock, Jr., concur.
 

 Order affirmed, with costs.